# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

SHAKAIRA L. DAVIS,

    Plaintiff,

v.                                        Civil Action 2:18-cv-475
                                          Judge Michael H. Watson
                                          Magistrate Judge Jolson

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Shakaira L. Davis, filed this action seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI. For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc. 13) be **OVERRULED**, and that judgment be entered in favor of Defendant.

## I. BACKGROUND

### A. Prior Proceedings

Plaintiff applied for DIB and SSI on December 14, 2011, alleging disability beginning February 1, 2009, due to numerous physical and mental impairments. (Doc. 10, Tr. 206). An Administrative Law Judge (the "ALJ") held a hearing on April 5, 2013. (*Id.*, Tr. 42–74) after Plaintiff's application was denied initially and upon reconsideration. The ALJ denied benefits in a written decision on June 27, 2013. (*Id.*, Tr. 13–36). That became the final decision of the Commissioner when the Appeals Council denied review. (*Id.*, Tr. 1–4).

On October 22, 2014, Plaintiff filed a case in this Court seeking a review of the final decision of the Commissioner. Upon a joint motion of the parties, the District Court remanded the

case to the Commissioner. (Tr. 813). The Appeals Council issued a Remand Order on May 6, 2015 (Tr. 814–15), and a hearing was held on February 12, 2016. (Tr. 711–36). On March 22, 2016, the ALJ denied benefits in a written decision. (Tr. 822–37). Plaintiff appealed that decision on June 14, 2016, which was denied due to a missed deadline. (Tr. 847–48). The Appeals Counsel remanded the case on September 16, 2016, after finding her appeal to have been timely filed. (Tr. 850–55). On February 8, 2017, another administrative hearing was held. (Tr. 691–710). On March 17, 2017, the ALJ again denied benefits in a written decision. (Tr. 662–79). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 639–42).

Plaintiff filed this action on May 14, 2018 (Doc. 1), and the Commissioner filed the administrative record on August 9, 2018 (Doc. 10). Plaintiff filed a Statement of Specific Errors (Doc. 13), the Commissioner responded (Doc. 16), and Plaintiff filed a Reply (Doc. 17).

### B. Relevant Medical Background

The ALJ usefully summarized the physical and medical evidence of record.

#### 1. Physical

The medical evidence of record shows that the claimant has degenerative arthritis of the spine and knees, bilateral trochanteric bursitis, fibromyalgia, and myofascial pain syndrome (Exhibits B3F, pp. 2, 4, 5 and B8F, p. 1). The claimant has presented to the doctor complaining of body stiffness and neck, low back, hip, right knee, and right ankle pain (Exhibits Bl F, p. 11; B3F, pp. 1, 3, 11; B6F, p. 3; B7F, p. 1; B8F, p. 10; BlOF, p. 2; B12F, p. 1; B13F, p. 4; B16F, p. 26; B28F, p. 2; B33F, pp. 63; and B52F). She has also reported having occasional cramping of the hands and feet (Exhibit B3F, p. 18). Upon examination, the claimant has had crepitus of the knees, but with no effusion or warmth, and tender points in the trochanteric bursa and cervical, thoracic, and lumbar spine (Exhibits 3F, pp. 1, 7, 13; B8F, p. 3; B12F, p. 1: B16F, p. 38; B19F, p. 2; B23F, pp. 16, 20, 33; B27F, p. 48; B33F, p. 4; B39F, pp. 4, 11; and B52F). A magnetic resonance imaging (MRI) of the lumbar spine in September 2011 was unremarkable , as were x- rays of the cervical spine (Exhibits

2

BlF, p. 65 and B8F, p. 41). X-rays of the bilateral hands in August 2012 were also unremarkable (Exhibits B8F, pp. 38, 39; and B43F, p. 7).

The claimant has received a number of conservative treatment measures for pain. She has received hip and knee injections for pain, which have decreased her pain significantly (Exhibits B3F, pp. 1, 3, 6, 9, 11, 15; 8F, pp. 1, 11; B19F, pp. 2, 4, 6; B30F, p. 7; B43F, p. 19; and B52F). She has been prescribed Voltaren gel, Lyrica, Cymbalta, Neurontin, Flexeril, Naprosyn, Indocin, and other medications for pain regulation (Exhibits B3F, pp. 2, 3, 20; B8F, pp. 4, 23; and B52F). The claimant has also received therapy, reportedly without significant relief (Exhibit B3F, pp. 8, 13). The claimant was referred for pain management services, which added Vicodin and Mobic to her medication regimen (Exhibits B7F, p. 4 and B25F, p. 8). She has also been given a prescription for an exercise transcutaneous electrical nerve stimulator (TENS) unit, back brace, and knee braces (Exhibits B19F, p. 2 and B52F, p. 9). In December 2014, the claimant began receiving trigger point injections and chiropractic treatment, which she reported decreased her pain and muscle tightness (Exhibits B39F, pp. 11, 14, 16; B43F, p. 18; and B45F).

The claimant has also made specific complaints of knee pain (Exhibits B4F, p. 2; B16F, pp. 1, 18; and B52F). The claimant has reported a significant history of knee surgeries on her right knee (Exhibits B8F, p. 22 and B24F, p. 1). X-rays of the bilateral knees in September 2010 showed mild narrowing and osteophyte formation of the medial compartment of the right knee and a normal left knee (Exhibit BlF, p. 62). Upon evaluation by the Ohio State University Department of Sports and Medicine in September 2012, the claimant's bilateral knees demonstrated no joint space narrowing (Exhibit B16F, p. 5). She had tenderness in the medial joint line, mild swelling, and a positive McMurray's sign of the right knee, but a relatively unremarkable right knee presentation otherwise (Exhibit B16F, p. 4). Follow-up x-rays and MRI's at that time showed an unremarkable left knee and tricompartmental arthritis of the right knee, with evidence of a prior ACL reconstruction (Exhibit B 16F, pp. 6-9). She was instructed to continue with ice and anti-inflammatories (Exhibit B16F, p. 5). The claimant has also been offered knee braces, but she stated that they were not helpful (Exhibits B16F, p. 30 and B52F, p. 14). In October 2013, the claimant was evaluated by a spine specialist to determine if her lower extremity pain was originating in the spine (Exhibit B16F, p. 33). Dr. Steward determined that her pain was consistent with diffuse myofascial pain and fibromyalgia, thus he encouraged her to continue performing her activities of daily living, doing physical therapy exercises, and maintaining her current pain regimen (Exhibit B16F, p. 42).

The claimant has been diagnosed with COPD (Exhibit B23F, p. 8). The claimant has presented to the doctor complaining of cough, congestion, and shortness of breath (Exhibits B3F, p. 19; B23F, pp. 10, 18, 23, 67 and B33F, p. 6). Pulmonary function studies performed in July 2010 showed evidence of moderate obstruction

(Exhibit B8F, p. 45). The claimant has been treated for bronchitis; however, she has not been hospitalized due to an exacerbation of her COPD (Exhibit B40F, p. 16). The claimant has been prescribed Albuterol to treat this condition (Exhibit B30F, p. 8).

The medical record also shows the claimant stands five feet, three inches tall and has weighed around 192 pounds (Exhibit B15F, p. 4). That is a body mass index of 34, which indicates obesity.

(Tr. 672–73).

### 2. Mental

Mentally, the claimant has been diagnosed with a major depressive disorder, an anxiety disorder, a post-traumatic stress disorder, and a schizoaffective disorder (Exhibits B2F, p. 2; B5F, p. 2; B46F; and B54F). The claimant has endorsed psychiatric symptoms, such as depressed mood, memory and concentration problems, anger, anxiety, sleep disturbance, nightmares, decreased energy, and worrying (Exhibits B5F, pp. 2, 8; B9F, p. 4; B22F, pp. 13, 17; B32F, p. 9; B33F, p. 47; B41F, p. 30; and B54F). The claimant also has history of alcohol and marijuana abuse, but has reported rare of use of alcohol more recently (Exhibit B5F, pp. 1, 5). The claimant has reported not taking medications in 2010 and 2011 (Exhibit B54F, p. 23). She was admitted to the hospital on a psychiatric basis in November 2011 for four days as a result of suicidal ideation, paranoia, and depressive symptoms (Exhibit B2F, p. 2). She acknowledged at that time that she had not taken her psychiatric medications for one month prior to this incident (Exhibit B2F, p. 20). She was started on Setraline, Clonidine, and Pregabalin and was released in stable condition (Exhibit B2F, p. 2). She reported that the change in her medications improved her depressive symptoms following her release from the hospital (Exhibit B3F, p. 1).

In December 2011, the claimant followed-up for an initial diagnostic evaluation at Southeast Inc. (Exhibit B5F, p. 4). The claimant has received counseling on and off since that time at multiple agencies, and has been prescribed Zoloft, Clonidine, Trazodone, Vistaril, Wellbutrin, and other medications to treat her symptoms (Exhibits B5F, p. 2; B9F, p. 2; Bl l F, p. 12; B41F, p. 20; B41F, p. 58; and B54F). She has reported having improvement with medication, with decreased depressive and anxiety symptoms (Exhibits B9F, p. 2; Bl lF, pp. 2, 4). While the treatment notes show mental status examinations that are unremarkable, with a normal mood and affect, other examinations show evidence of a depressed and anxious mood (Exhibits B9F, pp. 2, 5, 8; Bl lF, pp. 5, 8; B41F, pp. 57, 65, 67; and B44F, pp. 13, 21). However, the treatment notes show that the claimant's mental health is stable when she is compliant with medication and treatment. Specifically, while receiving

4

consistent treatment from June 2015 through November 2016, the claimant reported that she was doing well, she was mentally stable, and her medication was "really effective" for her (Exhibits B41F, pp. 54, 63, 69; B44F, pp. 9, 13, 16, 21, 36; and B49F).

The claimant had an inpatient hospitalization from March 9 through March 14, 2016 due to reported worsening anxiety and suicidal ideation. She also reported she had been smoking marijuana to help with her symptoms. The claimant's diagnoses included a schizoaffective disorder and a post-traumatic stress disorder (Exhibits B46F and B50F).

(Tr. 674).

### C. The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2015, and had not engaged in substantial gainful activity since February 1, 2009. (Tr. 666). The ALJ further found that Plaintiff had the following severe impairments: degenerative arthritis of the spine and knees; bilateral trochanteric bursitis; fibromyalgia; myofascial pain syndrome; chronic obstructive pulmonary disease (COPD); obesity; a major depressive disorder; an anxiety disorder; a post-traumatic stress disorder; a schizoaffective disorder; and a history of alcohol and marijuana abuse. (Tr. 667). The ALJ held, however, that there was no medical opinion of record to indicate the existence of an impairment or combination of impairments that met or equaled in severity the level of the Listings of Impairments. (Tr. 668).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff asserts one assignment of error: that the ALJ failed to follow the treating-physician rule when evaluating Dr. Ratliff's opinions.

Two related rules govern how an ALJ is required to analyze a treating physician's opinion. *Dixon v. Comm'r of Soc. Sec.*, No. 3:14-cv-478, 2016 WL 860695, at *4 (S.D. Ohio Mar. 7, 2016). The first is the "treating physician rule." *Id.* The rule requires an ALJ to "give controlling weight to a treating source's opinion on the issue(s) of the nature and severity of the claimant's impairment(s) if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).

Closely associated is "the good reasons rule," which requires an ALJ always to give "good reasons . . . for the weight given to the claimant's treating source opinion." *Dixon*, 2016 WL

6

860695, at *4 (quoting *Blakely*, 581 F.3d at 406 (alterations in original)); 20 C.F.R. § 404.1527(c)(2). In order to meet the "good reasons" standard, the ALJ's determination "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937.

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (internal citation and quotation marks omitted). The treating physician rule and the good reasons rule together create what has been referred to as the "two-step analysis created by the Sixth Circuit." *Allums v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 823, 832 (N.D. Ohio 2013).

> This is how the ALJ evaluated Dr. Ratliff's opinions:
>
> The opinion of John E. Ratliff, D.O., the claimant's treating physician, is given partial weight (Exhibit B36F). This opinion indicates that it is premised upon the claimant working in a place with "strong fumes, poor ventilation, heavy lifting, or chronic lifting and bending" (Exhibit B36F, p. 4). Thus, Dr. Ratliff's limitations regarding the claimant's ability to stand, walk, or sit are more restrictive because of the work environment presumed by Dr. Ratliff. While Dr. Ratliff is a treating physician, the opinion of the claimant's other treating physician, who is also an orthopedic specialist, Dr. Kaeding, is more congruent with the totality of medical evidence and does not include work environment presumptions. To the extent Dr. Ratliff's opinions are consistent with the residual functional capacity set forth above, those opinions are given great weight.
>
> The physical residual functional capacity opinions from Dr. Ratliff that were rendered for Franklin County Job and Family Services indicating that the claimant is limited to a reduced range of sedentary work are given partial weight because they were limited examinations, each based on one physical examination, and a determination of who is "disabled" or "unable to work" is an area reserved to the

> Commissioner (Exhibits B15F, pp. 2-9, 12-14, 17-18, and B34F, pp. 3- 10, 13-15, 18-19). Additionally, as discussed above, Dr. Kaeding's opinion is more consistent with the evidence of record.
>
> The mental residual functional capacity opinion from Dr. Ratliff that was rendered for Franklin County Job and Family Services indicating that the claimant has mostly moderate to marked mental limitations is given little weight because it is a limited examination, it is inconsistent with the medical evidence of record, and he is not a mental health specialist (Exhibits pp. B15F, pp, 15-16 and B34F, pp. 16-17). The record shows that the claimant has no more than moderate mental health symptoms that are stable when she is taking the appropriate medications (See Exhibits B41F, pp. 54, 63, 69 and B44F, pp. 9, 13, 16, 21, 36). When the claimant was admitted to the hospital due to psychiatric symptoms, she admitted that she had been off her medications, and she stabilized once again with resumption of treatment (Exhibits B2F, pp. 2, 20 and B3F, p. 1).

(Tr. 675–76).

Dr. Ratliff addressed Plaintiff's physical and mental limitations. So too, the Undersigned considers both.

### A. Physical Impairments

The Undersigned reads the ALJ's analysis of Dr. Ratliff's assessment as providing four primary reasons for assigning partial weight to the doctor's opinion regarding Plaintiff's physical impairments. First, the ALJ found Dr. Ratliff's opinion of lesser value because the doctor had assumed a certain time of environment—one with "strong fumes, poor ventilation, heavy lifting, or chronic lifting and bending." (Tr. 675). That is not an unreasonable interpretation of Dr. Ratliff's opinion because Dr. Ratcliff expressly stated that he was premising his assessment on the hypothetical work place having "strong fumes, poor ventilation, heavy lifting or chronic lifting and bending." (Tr. 1813). Given this, the ALJ had discretion to discount the application of Dr. Ratliff's opinion.

Second, the ALJ valued Dr. Kaeding's opinion more than Dr. Ratliff's because the ALJ

8

found that Dr. Kaeding's opinion was more consistent with the record evidence. For this point, the ALJ referred to his previous discussion of Plaintiff's medical history wherein the ALJ detailed a number of Plaintiff's medical records. (*See* Tr. 672–73). Although Plaintiff disagrees with the ALJ's ultimate interpretation of the record, the ALJ sufficiently explained why he favored Dr. Kaeding's opinion and offered adequate support for his conclusion. In reply, Plaintiff further challenges the ALJ's decisions to prefer Dr. Kaeding's opinion over Dr. Ratcliff's based upon the fact that the ALJ ultimately assessed greater restrictions than Dr. Kaeding proposed. Contrary to Plaintiff's assertions, this shows that the ALJ weighed the evidence and thoughtfully crafted the RFC. *See Ray v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 718, 727 (S.D. Ohio 2013) (noting that "[i]t is the Commissioner's function to resolve conflicts in the medical evidence[.]").

Third, the ALJ discounted Dr. Ratliff's opinion because it was based upon only one physical examination. Plaintiff attempts to challenge this conclusion (Doc. 13 at 11), but it is true that Dr. Ratcliff's treatment notes appear to refer to a single physical examination. (*See, e.g.*, Tr. 1166, 1169, 1171, 1175, 1181 (generally referring to the same examination)). The ALJ had discretion to discount Dr. Ratcliff's opinion for this reason. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

Fourth, the ALJ gave only partial weight to the physical residual functional capacity opinions from Dr. Ratliff that were rendered for Franklin County Job and Family Services for the above reasons and because "determination of who is 'disabled' or 'unable to work' is an area reserved to the Commissioner." (Tr. 675). That was a correct application of the law. *See, e.g.*, *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 493 (6th Cir. 2010) (holding that treating

9

physician's opinion that plaintiff was "unable to work" was entitled to no deference because that issue was "reserved to the commissioner").

Based upon the above reasons, the Undersigned concludes that the ALJ sufficiently explained why he did not credit Dr. Ratliff's opinions regarding Plaintiff's physical limitations and provided good reasons for doing so.

### B. Mental Impairments

Dr. Ratliff also completed a Medical Functional Capacity Assessment, which addressed Plaintiff's mental impairments. (Tr. 1178). Dr. Ratliff opined that Plaintiff had moderate to marked limitations in every area except understanding and remembering simple instructions, interacting with the general public, and responding appropriately to supervisors. (*Id.*). The ALJ gave this opinion little weight because, according to the ALJ, the opinion was based upon a limited examination, was inconsistent with the medical evidence of record, and Dr. Ratliff is not a mental health specialist. (Tr. 676). The ALJ also concluded that the record showed that Plaintiff had no more than moderate mental health symptoms and that her condition was stable when she was appropriately medicated. (*Id.*).

First, the ALJ correctly noted that Dr. Ratliff is not a mental health specialist. The law makes clear that an "ALJ may discredit the opinion of a physician that is outside her area of expertise." *See Adams v. Massanari*, 55 F. App'x 279, 284 (6th Cir. 2003); *Thacker v. Sec'y of Health & Human Servs.*, No. 90-5546, 1990 WL 200375, *3 (6th Cir. Dec. 12, 1990) (affirming a denial of benefits when there was no evidence that the physician was a specialist in the area of mental impairments). Here, nothing in the record indicates that Dr. Ratliff has specialized mental health training, and the ALJ was permitted to discount his opinion based upon that fact.

Second, the ALJ cited to specific clinical findings in order to conclude that Dr. Ratliff's opinion was inconsistent with the evidence. (Tr. 676 (citing Tr. 1920, 1929, 1935, 1985, 1989, 1992, 1997, 2012)). Those records generally show that Plaintiff's mental health was stable when she was compliant with treatment. For example, on February 11, 2015, Plaintiff reported "no mental health issue," and she stated "she [was] doing well." (Tr. 1920). She further reported that her "medication [was] really effective," and that she was "managing to be stable mentally." (*Id.*) Plaintiff offered similarly positive mental health throughout 2015. (Tr. 1927, 1935, 1985, 1989, 1992, 1997, 2012). Relatedly, the ALJ noted that when Plaintiff was admitted to the hospital due to psychiatric symptoms in early 2016, Plaintiff admitted that she had been off her medications, and she stabilized when she resumed treatment. (Tr. 676). Again, there is record support for this conclusion. (*See* Tr. 446, 465, 477). In later 2016, when Plaintiff was compliant with treatment, she again reported doing well mentally. (*See, e.g.*, Tr. 1985 (reporting that Plaintiff was compliant with her medication and "seem[s] to be in a stable mental condition")).

Plaintiff cites evidence that arguably could support a different conclusion (Doc. 13 at 15), but that is not what this Court must consider. Instead, this Court asks whether the ALJ's conclusion has support. *See Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 175–76 (6th Cir. 2009) ("Where the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record, this Court generally will uphold an ALJ's decision to discount that opinion."). The Undersigned concludes there is support for the ALJ's interpretation of the evidence, and, consequently, the ALJ did not err.

## IV. CONCLUSION

For the reasons stated, it is **RECOMMENDED** that Plaintiff's Statement of Errors (Doc.

13) be **OVERRULED**, and that judgment be entered in favor of Defendant.

## Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

IT IS SO ORDERED.


Date: May 1, 2019               /s/ Kimberly A. Jolson
                                KIMBERLY A. JOLSON
                                UNITED STATES MAGISTRATE JUDGE